<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIZCETT ALMODOVAR, | : |
| | : |
| | : Civil Action No. 11-5086(NLH) |
| Petitioner, | : |
| | : |
| v. | : **OPINION** |
| | : |
| WILLIAM HAUCK, et al., | : |
| | : |
| Respondents. | : |
| | : |

APPEARANCES:

Lizcett Almodovar
Edna Mahan Correctional Facility
P.O. Box 4004
Clinton, NJ  08809
     Petitioner pro se

Nancy P. Scharff, Esq.
Camden County Prosecutor's Office
Motions and Appeals Unit
25 North Fifth Street
Camden, NJ  08102-1231
     Counsel for Respondents

HILLMAN, District Judge

     Petitioner Lizcett Almodovar, a prisoner currently confined

at the Edna Mahan Correctional Facility in Clinton, New Jersey,

has submitted a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  The respondents are Administrator William

Hauck and the Attorney General of New Jersey.

For the reasons stated herein, the Petition shall be denied.

## I.   BACKGROUND

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> In December 2004, Almodovar was charged in nine out of twelve counts of an indictment arising out of the robbery of a taxi company at which she had once been employed. During the robbery, the owner of the cab company was fatally shot by one of Almodovar's co-defendants.

> On May 2, 2005, pursuant to a plea agreement, Almodovar pled guilty to a single count of first-degree aggravated manslaughter, contrary to N.J.S.A. 2C:11-4(a).[FN1] As part of the agreement, the prosecutor agreed to recommend an eighteen-year period of incarceration, with an eighty-five percent period of parole ineligibility. Almodovar also entered into a cooperation agreement with the State. The remaining counts were to be dismissed at the time of sentencing.

> > [FN1] The plea was to the first count of the indictment, which had originally charged first-degree murder, but was downgraded to first-degree aggravated manslaughter for the purposes of the plea.

> At the plea hearing, the judge went through the plea agreement and satisfied himself that Almodovar understood her rights, the terms of the agreement, and the consequences of the plea. He also asked defense counsel to establish the factual basis of the plea with his client. Almodovar testified that she met with

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

the co-defendants on November 17, 2003. She understood
that they wanted to rob the office of the cab company
where she used to work. She assisted one of the co-
defendants in drawing a diagram of the office. She
told them where the company's cash was stored and that
they could expect to find approximately $3000.

Almodovar subsequently met the co-defendants near
the cab company's office. She and a female co-
defendant went into the office, and she asked for
payment for the last week she had worked there. After
she and the co-defendant left, they met the others and
two male co-defendants entered the office. After the
two men went into the office, Almodovar's female co-
defendant informed her that one of the men was
carrying a "burner," which she later learned referred
to a gun.

Based upon his examination of Almodovar and the
factual basis adduced by defense counsel, the judge
concluded that she entered into the plea "knowingly,
intelligently and voluntarily." He also concluded that
there was a factual basis for the plea.

State v. Almodovar, 2011 WL 519955, *1 (N.J. Super. App. Div.

Feb. 16, 2011), certif. denied, 207 N.J. 190 (2011).

At the sentencing hearing on June 24, 2005, Petitioner was

represented by the same counsel who had negotiated the plea

agreement.  Counsel made no arguments regarding the application

of aggravating and mitigating factors to the sentence, nor did

he argue for a sentence below the 18 years that the prosecutor

had agreed to recommend in the plea agreement.  Instead, he

indicated that he would allow a letter written by Petitioner, to

the judge, speak for itself.  Petitioner addressed the judge,

expressing remorse for her actions.  In addition, the sentencing

judge had previously heard from the victim's son in connection

3

with sentencings of some of Petitioner's co-defendants. (Answer, Ex. Rta-2, Sentencing Transcript.)  After that, the judge imposed sentence.

The judge made the following findings with respect to the aggravating and mitigating factors.

All right. Ms. Almodovar, to say that this is tragic doesn't begin to describe what occurred here.

A man who was obviously someone who was a very productive member of society, someone who was running a business that was a service to many people, someone who was an individual, who was certainly an inspiration to the members of his family is gone and you played a very, very significant role in creating the circumstances that led to his murder.

And, while I understand the regret, I understand the concept of penance, I understand the concept that you made a mistake, those things are all real insofar as your thinking, and I don't for a moment conclude that you're not sincere in those thoughts, but one can only conclude that that mistake couldn't have been bigger. And, when you call it a mistake, I don't think it fully describes it, because there was a consciousness of what you were doing.

I know that you hoped for a robbery and not a death in connection with this. I know that the intent was money. But there was a chain of activities or a chain of events that was set in motion by you and I find that there had to be a very clear awareness because as these ... matters moved forward, it was clear that there was a gun involved, ... it was clear that there were the very risks of death that actually came to fruition here.

So, though I understand your position, I find that there was a ... very, very conscious level of reasoning on your part.

4

And I also note that you strike me as someone who is intelligent, someone who is thoughtful and someone who had the clear capacity to assess what was going on here, and what the consequences were.

You're young, but not incredibly young; you're twenty-three years old, and amongst other things certainly you've referenced the fact that you have a daughter and that your daughter now is being taken care of, as I understand it, by your aunt. She's been adopted by your aunt.

But one of the things that's clear to me is this, that when someone has a child and someone then engages in these actions, someone recognizes what it is therefore to cause someone else to lose a parent, to lose someone they love. And, in a sense, it makes it hard to understand and comprehend how you can move forward with these events.

Ma'am, I've looked at the presentence report and I find these aggravating factors:

There is a risk that you'll commit another offense and there's a need to deter you and others from violating the law.

As to mitigating factors, I do find that you do not have a history of prior delinquency, and I find that the absence of that prior delinquency is something that was appropriately factored into the sentence that was agreed upon.

I find also based upon the cooperation agreement that has been signed in this case-and I understand that it has been signed?

[ASSISTANT PROSECUTOR]: That is correct, Judge.

THE COURT: That that represents a willingness to cooperate with law enforcement officials. And I, therefore, find that the original murder charge here that was amended to

set forth an aggravated manslaughter charge and
again the sentence of eighteen years, 85 percent
to be served without eligibility for parole,
appropriately takes into account these two
mitigating factors, it takes them into account
appropriately.

Weighing these aggravating and mitigating
factors, however, I do find that the crassness
that's evident in this ... crime rather
represents really the very risk that you will and
do have the capacity to commit another crime. And
I do find that the risk must be weighted heavily,
and I do find that the need for deterrence must
be weighed heavily, and, I do find, therefore,
that the aggravating factors outweigh the
mitigating factors.

This was a negotiated plea, however, and I
do find that it factors all of these issues
appropriately and I do intend to, therefore,
accept the negotiated plea agreement.

....

Ma'am, the agreement, therefore represents
as I've said a fair and reasonable disposition.
It's in the interest of justice, and it
accomplishes the need for punishment, deterrence
and recognizes your prospects for rehabilitation.
It's going to result, therefore, in an eighteen-
year sentence that would allow for you to be
eligible for parole after fifteen years, three
months, nineteen days.

State v. Almodovar, 2011 WL 519955 at *2-*3.

Petitioner filed a direct appeal which was later dismissed,

for reasons that are not apparent from the record.  Petitioner

then filed a state petition for post-conviction relief,

asserting ineffective assistance of counsel at sentencing.  A

new judge heard oral argument on the application, then denied

relief.  (Answer, Ex. Rta-3, PCR Transcript; Ex. Ra12, Order denying post-conviction relief.)  The Appellate Division affirmed the denial of relief, State v. Almodovar, 2011 WL 519955 (N.J. Super. App. Div. Feb. 16, 2011), and the Supreme Court of New Jersey denied certification, State v. Almodovar, 207 N.J. 190 (2011).

This Petition followed.  Here, Petitioner asserts that counsel provided ineffective assistance at sentencing (1) by failing to argue for a sentence less than the negotiated plea bargain, especially considering Petitioner's limited role in the crime, and (2) by failing to object to law enforcement reports that were attached to the Pre-Sentence Investigation Report, which introduced alleged facts that went beyond Petitioner's factual basis provided in her guilty plea colloquy, which she had not admitted, and which had not been found by a jury. (Petition, ¶ 12.)

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II), cited in Ely v. Erickson, 712 F.3d 837 (3d Cir. 2013).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a

8

legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. See also Moore v. DiGuglielmo, No. 09-2189, 489 F.App'x 618, 624 n.2 (3d Cir. 2012) (noting the same). To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Williams, 529 U.S. at 409. "This standard … is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 133 S.Ct. 1781, 1786-87 (2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)).

The "clearly established Federal law" referred to in § 2254(d)(1) consists of the U.S. Supreme Court precedents at the time of the state court decision adjudicating the petitioner's claims. Greene v. Fisher, 132 S.Ct. 38 (2011). In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, however, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999),

9

cited in Glenn v. Wynder, No. 12-4333, 2014 WL 642947, *5 n.6
(Feb. 20, 2014) and Hardcastle v. Horn, 368 F.3d 246, 256 n.3
(3d Cir. 2004).

Even a summary adjudication by the state court on the
merits of a claim is entitled to § 2254(d) deference.  Chadwick
v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)), cited in Wright v. Vaughn,
473 F.3d 85, 91 (3d Cir. 2006).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  Priester
v. Vaughn, 382 F.3d 394, 397-98 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

The scope of the record for a § 2254(d)(1) enquiry is
limited to the record before the state court that adjudicated
the claim on the merits.  Cullen v. Pinholster, 131 S.Ct. 1388,
1398 (2011).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.
Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner,
404 U.S. 519, 520 (1972).  A pro se habeas petition and any
supporting submissions must be construed liberally and with a

measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d

Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d

Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

Petitioner argues that she is entitled to federal habeas

relief because her trial counsel failed to provide effective

assistance at sentencing.  In particular, Petitioner contends

that her counsel should have emphasized to the sentencing judge

Petitioner's youth, inexperience with criminal matters, and

relative lack of culpability because, for example, she was not

the shooter.  In addition, she contends that counsel should have

objected to the judge's consideration of police reports attached

to the PSI, which Petitioner characterizes as containing facts

to which she did not admit.[2]  Before the state courts, Petitioner

described the challenged information as including various

witness statements describing the events that transpired during

---

[2] It appears that this aspect of Petitioner's ineffective-
assistance claim is based on a series of U.S. Supreme Court
cases, beginning with Apprendi v. New Jersey, 530 U.S. 466
(2000), addressing the factors governing the maximum sentence
which can be imposed for any conviction, and as applied to the
New Jersey sentencing scheme in the New Jersey Supreme Court
case State v. Natale, 184 N.J. 458 (2005).  In state court,
Petitioner presented this as a separate claim rather than as an
aspect of the ineffective-assistance claim.  Nevertheless, as
the state court addressed the substance of this claim, and as it
is plainly meritless, this Court will exercise its authority to
deny it, as explained more fully, below.  See 28 U.S.C.
§ 2254(b)(2).

Petitioner's entry into the apartment and during the actual robbery and homicide, a statement by an investigator that the robbery was an attempted home invasion, and an interview of a co-defendant regarding various discussions among the participants in the crime.  (Answer, Ex. Ra15, Petitioner's Appellate Brief, at 30-31.)

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  With respect to the "prejudice" prong, a "reasonable probability" of

12

prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Thus, counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable."  Id. at 687.

There exists a right to effective assistance of counsel at sentencing in both capital and non-capital cases.  See Lafler v. Cooper, 132 S.Ct. 1376, 1385-86 (2012) (collecting cases).  "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'"  Id. at 1386 (quoting Glover v. United States, 531 U.S. 198, 203 (2001) (alteration in original)).

The Appellate Division correctly identified the governing Strickland standard for claims of ineffective assistance of counsel, and then rejected Petitioner's claim.

> For the purposes of this appeal, we will assume that defense counsel's failure to address the sentencing judge with respect to the aggravating and mitigating factors or the length of the sentence satisfies the first prong of the Strickland test. We nevertheless agree with the PCR judge that Almodovar has failed to satisfy the second prong.
>
> On appeal, Almodovar argues her trial counsel failed to articulate mitigating factors that would have been applicable.
>
> The available factors were:

(1) The defendant's conduct neither caused nor threatened serious harm;

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm;

(3) The defendant acted under a strong provocation;

(4) There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense;

(5) The victim of the defendant's conduct induced or facilitated its commission;

(6) The defendant has compensated or will compensate the victim of his conduct for the damage or injury that he sustained, or will participate in a program of community service;

(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense;

(8) The defendant's conduct was the result of circumstances unlikely to recur;

(9) The character and attitude of the defendant indicate that he is unlikely to commit another offense;

(10) The defendant is particularly likely to respond affirmatively to probationary treatment;

(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents;

(12) The willingness of the defendant to cooperate with law enforcement authorities;

(13) The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant.

[ N.J.S.A. 2C:44-1(b).]

The sentencing judge applied factors (7) and (12). Factors (1) through (6) and (13) were clearly inapplicable. The judge's determination that aggravating factors (3) and (9), N.J.S.A. 2C:44-1(a)(3) and (9), were applicable, which was supported by the record, negates the applicability of mitigating factors (8), (9), and (10). That leaves mitigating factor (11). While the judge did discuss Almodovar's young child, who had been adopted by an aunt, he did not find it as a mitigating factor. That decision was supported by the record. Even if applicable, however, it would not have overcome the strong presumption of incarceration for a first-degree crime.

The crime for which Almodovar was being sentenced was first-degree aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1), which has a sentencing range of ten to thirty years pursuant to N.J.S.A. 2C:11-4(c). The sentence imposed, which was consistent with the plea agreement, was eighteen years, well below the midpoint of the applicable range. The record reveals significant evidence that would have subjected Almodovar to a conviction for felony murder, N.J.S.A. 2C:11-3(a)(3), which would have carried a sentence of at least thirty years without parole under N.J.S.A. 2C:11-3(b). Consequently, our review of the record leads us to conclude that there is no "reasonable probability" that, even if the sentencing judge had applied mitigating factor (11) and defense counsel had argued for a lesser sentence, the judge would have imposed one.

Having reviewed Almodovar's remaining arguments on appeal in light of the record before us, we find them to be without merit and not warranting discussion in a written opinion. R. 2:11-3(e)(2). We make the following brief comments.

An evidentiary hearing is only required to resolve issues of fact when there has been a prima facie showing of ineffective assistance of counsel.

Preciose, supra, 129 N.J. at 462-64. No such showing
was made in this case.

        In an argument not raised in the trial court,
Almodovar argues that the judge's access to
investigative materials and a prior statement of the
victim's son requires resentencing under State v.
Natale, 184 N.J. 458 (2005). We are satisfied that
Natale is not applicable in this case and that, even
if it were, there has been no showing of a Natale
violation. Her related arguments are also without
merit.

State v. Almodovar, 2011 WL 519955 at *5-*6.

        This Court agrees that Petitioner has failed to demonstrate

any prejudice resulting from her counsel's failure to argue for

a reduced sentence at the sentencing hearing.  The trial court

carefully considered the circumstances of the crime,

Petitioner's significant role, and all of the applicable

aggravating and mitigating factors, in arriving at a decision to

implement the 18-year sentence reflected in the plea agreement,

which was set below the mid-point presumptive sentence for the

offense and which was well below the 30-year minimum Petitioner

faced for a felony murder conviction.  Petitioner's counsel had

already obtained, therefore, a substantial reduction in

Petitioner's sentencing exposure through the plea negotiation

process.  Nothing in the record suggests that counsel could have

achieved a further reduction in Petitioner's sentence by making

the arguments Petitioner urges here.[3]   Indeed, Petitioner's suggestion that counsel should have argued that her role in the crime was minor is simply belied by the facts to which she admitted during her plea hearing.  As a former employee of the cab company, she assisted her co-defendants in drawing a diagram of the office, she told them how much cash was stored there and where they could expect to find it, and she assisted them in obtaining entry to the office.  The state court correctly identified and applied the applicable law.

Petitioner's claim that counsel should have objected to the Court's consideration of police investigative reports is equally meritless.  In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), pursuant to the Fourteenth Amendment right to due process, coupled with the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a

---

[3] Tucker v. Day, 969 F.2d 155 (5th Cir. 1992), on which Petitioner relies, is simply inapposite.  There, the defendant had never even met his counsel before appearing in court for resentencing and his counsel announced at the hearing that he was "just standing in."  969 F.2d at 159.  Here, Petitioner's counsel had conferred with her in connection with the plea negotiations which resulted in a substantial reduction in Petitioner's overall sentencing exposure, including the prosecutor's agreement to recommend a sentence below the presumptive term for aggravated manslaughter.  Similarly, the circumstances here fall far outside the realm where prejudice is presumed if the accused is denied counsel at a critical stage of the proceeding or if counsel entirely fails to subject the government's case to "meaningful adversarial testing."  Cf. U.S. v. Cronic, 466 U.S. 648, 659-60 (1984).

prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted). More specifically, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis in original) (citations omitted). Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Apprendi to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

In State v. Natale, 184 N.J. 458 (N.J. 2005), the Supreme Court of New Jersey evaluated the constitutionality of the New Jersey sentencing scheme in light of the Apprendi line of cases.

> Our Code provisions make clear that, before any
> judicial factfinding, the maximum sentence that can be
> imposed based on a jury verdict or guilty plea is the
> presumptive term. Accordingly, the "statutory

18

maximum" for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive sentence.

<u>Natale</u>, 184 N.J. at 484.  Because the New Jersey Code's system allowed for sentencing beyond the statutory maximum presumptive term, the Supreme Court of New Jersey found the state sentencing system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, e.g., ten years for a second-degree offense."  <u>Natale</u>, 184 N.J. at 487 (citation omitted).  The Supreme Court of New Jersey held that the rule it announced in <u>Natale</u> was applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision, August 2, 2005. <u>Natale</u>, 184 N.J. at 494.  Thus, the <u>Natale</u> decision would have applied to Petitioner, who was sentenced only weeks before. Petitioner did not, however, raise this claim on direct appeal. Instead, Petitioner raised this claim in her appeal from the denial of her state petition for post-conviction relief.

In any event, the Appellate Division determined that no <u>Natale</u> violation had occurred.  As Petitioner was sentenced to a term of 18 years' imprisonment, below the then-applicable presumptive term of 20 years for aggravated manslaughter, <u>see</u>

19

N.J.S.A. 2C:44-1(f)(1)(a); <u>State v. Shepperson</u>, 2011 WL 4993348 (N.J. Super. App. Div. Feb. 15, 2011) <u>certif. denied</u>, 209 N.J. 98 (2012), this Court agrees that no <u>Apprendi</u>/<u>Natale</u> violation occurred.  Thus, even if the sentencing court considered facts other than those admitted by Petitioner, she has not established prejudice, under <u>Strickland</u>, that would entitle her to federal habeas relief.

The decisions of the New Jersey state courts were neither contrary to nor an unreasonable application of <u>Strickland v. Washington</u>, the controlling Supreme Court precedent.  Petitioner is not entitled to federal habeas relief.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003)

(citation omitted), <u>cited in</u> <u>Eley v. Erickson</u>, 712 F.3d 837, 845
(3d Cir. 2013).

Here, jurists of reason would not disagree with this
Court's resolution of Petitioner's claims.  No certificate of
appealability will issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition shall be
denied.  An appropriate order follows.




At Camden, New Jersey                    <u>  s/ Noel L. Hillman  </u>
                                         Noel L. Hillman
                                         United States District Judge

Dated:  October 1, 2014